IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ANDRE GORDON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 119-093 |
| | ) | |
| ARTIS SINGLETON, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at Wilcox State Prison in Abbeville, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254.  Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.      BACKGROUND

This case challenges the validity of Petitioner's convictions for child molestation, aggravated sexual battery, and forcible rape as determined by a jury in Richmond County, Georgia, after a trial conducted from March 10 through March 12, 2008.  Gordon v. State, 761 S.E.2d 169 (Ga. Ct. App. 2014); (doc. no. 9-15, p. 19).  Petitioner was also charged with, and convicted of, incest, but the incest conviction was overturned on direct appeal.  Gordon, 761 S.E.2d at 171, 173; (doc. no. 9-11, pp. 75-78).  At the conclusion of the jury trial, the trial court sentenced Petitioner as a recidivist under O.C.G.A. § 17-10-7(a) & (c) to twenty years imprisonment on each conviction of child molestation, aggravated sexual battery, and incest,

as well as life imprisonment for the forcible rape conviction, all without the possibility of parole.  (Doc. no. 9-11, p. 7; doc. no. 9-14, pp. 92-93.)  Public defender Jean Colohan represented Petitioner at trial.  (Doc. no. 9-15, p. 9.)

Appointed attorney Peter Johnson represented Petitioner post-conviction.  (Doc. no. 9-10, pp. 7-8.)  After a hearing spanning three separate dates in 2011 and 2013 on the motion for new trial, (doc. no. 9-14, pp. 117-22; doc. no. 9-16, pp. 3-101), the trial court denied the motion for new trial in all respects but the challenge to sentencing Petitioner as a recidivist under O.C.G.A. § 17-10-7(c).  (Doc. no. 9-15, pp. 7-9.)  As a result, the trial court resentenced Petitioner as a recidivist under O.C.G.A. § 17-10-7(a) and imposed the same term of imprisonment but without the condition prohibiting parole.  (Id. at 14-15.)  Mr. Johnson filed a direct appeal, raising five grounds for relief:

(1)     The evidence was of insufficient weight to sustain the verdict.

(2)     The statute of limitations for the offenses of aggravated sexual battery and incest had expired.

(3)     There exists a fatal variance between dates alleged in the indictment and the evidence adduced at trial.

(4)     The trial court erred in instructing the jury as to the material elements of the offense of rape.

(5)     The appellant was afforded ineffective assistance of trial counsel based on:

    (a) No demurrer to the indictment based on lack of blood relationship to support the incest charge;

    (b) No plea in bar regarding expiration of the statute of limitations for aggravated sexual battery and incest;

    (c) No request for charge on the lesser included offense of sexual battery; and

2

    (d) No objection to court's omission of the definition of the forcible
      element of rape.

(Doc. no. 9-16, pp. 105-35.)

   In its opinion, the Georgia Court of Appeals provided the following description of the

evidence at trial:

> . . . [T]he evidence shows that when T.S. was 13 years old, [Petitioner] came to
> live with her family.  [Petitioner] began touching and interacting inappropriately
> with T.S. . . . .  T.S. made outcry to her aunt and later to her mother, who called
> the police.  The same day that the police were called, [Petitioner] told T.S.'s
> stepfather that he had "messed with" his family.  T.S. was examined by a nurse
> at a clinic for sexually transmitted diseases and at a hospital.  The examinations
> showed that her hymen was not intact, but also showed no signs of bruising,
> tearing, or trauma consistent with sexual assault.  T.S. indicated she had no
> sexual history prior to the incident with Petitioner.
>
>   . . . .
>
> . . . At trial, T.S. testified that [Petitioner] "would finger me *in my vagina*."
> (Emphasis supplied.)  A police investigator who interviewed T.S. testified that
> she told him [Petitioner] "penetrated her vagina area with his fingers" and "took
> his right hand and placed his index and middle finger into her vaginal area and
> started to rub inside her vagina."
>
>   . . . .
>
> . . . [A]t trial, T.S. testified that [Petitioner] "tried to penetrate" her while "I was
> . . . laying [sic] on my side, and from behind he tried to put his penis in me.  But,
> that's when he pushed in, and I kind of 'crinched' (phonetic) and it hurt and
> that's why I looked at him, and that's when he pulled out[.]"  T.S. testified that
> when [Petitioner] tried to penetrate her, she "got real scared[.]"  When he told
> her not to tell her grandmother, she curled up in a ball.  She finally decided to
> tell someone, fearing that if she did not act soon, "it could get worse."  The
> investigator who interviewed T.S. testified that she told him, as to the same
> incident, that [Petitioner] "pulled her shorts and panties aside and *inserted his
> penis into her vagina*."  (Emphasis supplied.)

Gordon, 761 S.E.2d at 171-72.

The Georgia Court of Appeals overturned the incest conviction, concluding Petitioner's relationship to the victim did not fall within the statutory definition of O.C.G.A. § 16-6-22(a)(6). Id. at 171-73. The case was remanded for resentencing. Id. at 175. On February 28, 2018, the trial court imposed a sentence of twenty years' imprisonment on each count of child molestation and aggravated sexual battery, and life imprisonment on the rape charge. (Doc. no. 9-2, p. 1.) According to the sentencing document, Petitioner's recidivist designation was removed. (Id.) The record does not reflect any appeal from the 2018 sentence.

While awaiting resentencing, Petitioner filed a state habeas corpus petition *pro se* on March 9, 2015, in Wilcox County, and provided clarifying details in an amendment filed August 6, 2015. (Doc. nos. 9-3, 9-4.) Petitioner raised the following claims in his state habeas petition:

(1)     Appellate counsel provided ineffective assistance by not raising trial counsel's alleged ineffectiveness in failing to demand a speedy trial.

(2)     Appellate counsel provided ineffective assistance by failing to provide record citations, as required by the Court of Appeals Rules, in support of the claim trial counsel was ineffective in failing to raise a statute of limitations challenge to the aggravated sexual battery charge, thereby abandoning the issue.

(3)     Appellate counsel provided ineffective assistance by not raising trial counsel's alleged ineffectiveness in failing to argue Petitioner was not eligible to be sentenced as a recidivist under O.C.G.A. § 17-10-7(a) because he did not have the requisite number of prior convictions resulting in incarceration, as his out-of-state prior convictions resulted in "probation alone."

(4)     Appellate counsel provided ineffective assistance by not raising trial counsel's alleged ineffectiveness in failing to challenge the sufficiency of the evidence of force as an element of rape.

(5)     Appellate counsel provided ineffective assistance by not raising trial counsel's alleged ineffectiveness in failing to challenge the jury

4

instruction for rape, which Petitioner contended did not adequately explain the force element.

(6)     Appellate counsel provided ineffective assistance by not raising trial counsel's alleged ineffectiveness in failing to challenge the aggravated sexual battery charge on statute of limitations grounds.

(7)     Appellate counsel provided ineffective assistance by not raising trial counsel's alleged ineffectiveness in "failing to challenge the sufficiency of count (1) child molestation."

(8)     Appellate counsel provided ineffective assistance by not raising as an alleged error on appeal that the trial court erred in not charging sexual battery as a lesser included offense of child molestation.

(Doc. nos. 9-3, 9-4.)  The state habeas court conducted an evidentiary hearing on August 27, 2015, (doc. no. 9-10, p. 1), and denied relief in a final order filed on September 30, 2015,  (doc. no. 9-5).

The Georgia Supreme Court granted a certificate of probable cause to appeal ("CPC") "to determine if the habeas court erred in ruling that certain claims alleged in [Petitioner's] petition for habeas corpus were foreclosed from habeas review."  Gordon v. Caldwell, 814 S.E.2d 680, 680 (Ga. 2018).  Specifically, the Georgia Supreme Court considered three claims of ineffective assistance of appellate counsel:  Claims Two and Six, focusing on Petitioner's contention the statute of limitations had run on the aggravated sexual battery charge, and Claim Four, concerning the failure to raise a challenge to the sufficiency of the evidence of force as an element of rape.  Id. at 681.  The Georgia Supreme Court concluded the state habeas court incorrectly determined appellate counsel failed to raise an ineffective assistance of trial counsel claim based on not raising a statute of limitations challenge to the aggravated battery charge, but because the issue had been raised and rejected on direct appeal, Count Six formed no basis

5

for state habeas relief.[1]  Id. at 682.

However, as to Claim Two regarding abandonment of a statute of limitations issue based on failing to follow court rules and Claim Four regarding a challenge to the force element of rape, the Georgia Supreme Court remanded the case for the state habeas court to reconsider those claims.  Id.  The Supreme Court expressed no opinion on the merits of the remanded claims, but ruled only that the claims were not foreclosed and must be properly considered by the state habeas court in the first instance.  Id. at n.5.  The remainder of the state habeas decision was summarily affirmed.  Id. at n.2.

Upon remand, the state habeas court reviewed the ineffective assistance of appellate counsel claims and, in an order filed June 18, 2018, determined Petitioner was not entitled to relief because he could not establish both deficient performance and prejudice as to any of the claims.  (See doc. no. 9-8.)  Petitioner again sought a CPC to appeal, but the request was dismissed on April 1, 2019.  (See doc. no. 9-9.)  As the Georgia Supreme Court explained, Petitioner timely filed his application with the Supreme Court, but he failed, as required by O.C.G.A. § 9-14-52(b), to also timely file his notice of appeal with the habeas court, thereby resulting in dismissal of the

---

[1]The Georgia Supreme Court explained:

[T]he Court of Appeals specifically declined to consider the ineffective assistance of trial counsel issue.  That ordinarily leaves the habeas court to do so in the first instance through the lens of ineffective assistance of appellate counsel, although in this case we can see from the face of the Court of Appeals opinion that the question [ineffective assistance of trial counsel for not raising a statute of limitations challenge to the aggravated battery charge] was indeed raised by appellate counsel and so affirm the habeas court's rejection of Claim Six on this different ground.

Gordon, 814 S.E.2d at 682.  Nevertheless, on remand, the state habeas court revisited the merits of the ineffective assistance claim raised in Ground Six and determined Petitioner was not entitled to relief.  (Doc. no. 9-8, pp. 2-5.)

application.  (See id.)  Petitioner's motion for reconsideration was denied May 6, 2019.  Gordon

v. Caldwell, No. S18H1612 (Ga. May 6, 2019).

Petitioner then timely filed the above-captioned § 2254 petition *pro se*, raising the same

eight grounds for relief raised in his state habeas petition, as set forth above.  (See doc. no. 1.)

In his reply brief, Petitioner attempts to raise the additional claim he was improperly

resentenced in 2018 because removal of his recidivist designation under O.C.G.A. § 17-10-

7(a) should have eliminated his life sentence for rape.  (Doc. no. 12, pp. 3, 7.)  Respondent

argues federal relief should be denied on all claims either because the state habeas court

decision deserves deference or because Petitioner defaulted his claims.  (See doc. nos. 8, 8-1.)

## II.    STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with
> respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim - -
>
> (1)   resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law, as
>         determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in the
>         State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure

of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for

asserting constitutional challenges to state convictions."  Harrington v. Richter, 562 U.S. 86,

103 (2011).  Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard

for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014). Rather, the habeas petition must show the state court decision was "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S. 312, 316 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review."). "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . . Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III.   DISCUSSION

### A.   Petitioner's Procedural Default

#### 1.   A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims the petitioner did not raise in state court, but could have raised by any available procedure. 28 U.S.C. § 2254(b)(1)(A) & (c). A state inmate is

deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the federal claims.  Castille v. Peoples, 489 U.S. 346, 351 (1989).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

Moreover, giving the state courts an opportunity to act on a petitioner's claims includes allowing the state courts to complete the appellate review process.  As the Supreme Court explained:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

Id. at 845.  This "one full opportunity" includes pursuing discretionary review with the highest available appellate court where the highest court of the state has not opted out of this requirement.  Id.  "Georgia's appeal process requires that a petitioner seek a certificate of probable cause to appeal to the Georgia Supreme Court; claims not raised in an application for a certificate of probable cause are considered unexhausted on subsequent federal habeas review.  Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1364 (11th Cir. 2020) (citations omitted); see also Pope v. Rich, 358 F.3d 852, 853 (11th Cir. 2004) (per curiam) (ruling a petitioner's "failure to apply for a certificate of probable cause to appeal the denial of his state habeas petition to the Georgia Supreme Court means that [the petitioner] has failed to exhaust all of his available state remedies.").

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts."   Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)).  The exhaustion requirement applies with equal force to all constitutional claims. See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-54 (11th Cir. 2012); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992).  "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'"   Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (citation omitted).  Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available.  McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005).

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court. First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on independent and adequate procedural grounds.  "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment." Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1335 (11th Cir. 2012).

A state court decision rests on "independent and adequate" state procedural grounds when it satisfies the following three-part test:

First, the last state court rendering a judgment in the case must clearly and

expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim.  Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law.  Finally, the state procedural rule must be adequate; *i.e.,* it may not be applied in an arbitrary or unprecedented fashion.  The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine.  In other words, a state procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established and regularly followed."

Id. at 1336 (internal quotations and citations omitted).  Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default."  Walker v. Martin, 562 U.S. 307, 311 (2011).

Second, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court.  In such instances, unless the petitioner either establishes the cause and prejudice or the fundamental miscarriage of justice exception, the failure to bring the claim properly in state court has "matured into a procedural default."  Smith v. Jones, 256 F.3d 1135, 1138-39 (11th Cir. 2001).  Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."  Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1342 (11th Cir. 2009) (citing Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998)); Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999).  To determine whether a claim is procedurally barred in this way, the federal court must ask whether "it is clear from state law that any future attempts at exhaustion would be futile."  See Bailey, 172 F.3d at 1305.

Simply put, if a claim has not been "fairly presented to the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006). To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) precludes state habeas review of any issue not preserved for collateral attack in a state court by timely objecting and raising the issue on appeal. See Devier v. Zant, 3 F.3d 1445, 1454-55 (11th Cir. 1993) (citing O.C.G.A. § 9-14-48(d) and upholding a finding of procedural default on numerous claims); see also Waldrip v. Head, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default, and in order to surmount the bar to a defaulted claim, one must meet the 'cause and prejudice' test."); Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows: a failure to make timely objection to any alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."). In addition, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition. O.C.G.A. § 9-14-51; Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

## 2. Petitioner's Claims in Grounds Two, Four, and Six Are Procedurally Defaulted

In Ground Two, Petitioner argues appellate counsel abandoned the issue that trial counsel was ineffective for failing to file a plea-in-bar alleging expiration of the statute of limitations on the aggravated sexual battery charge because appellate counsel failed to provide

record citations in support of the claim.  In Ground Four, Petitioner argues appellate counsel provided ineffective assistance by not raising trial counsel's failure to challenge the sufficiency of the evidence of force as an element of rape.  In Ground Six, Petitioner argues appellate counsel provided ineffective assistance by not arguing trial counsel  was ineffective for failing to challenge the aggravated sexual battery charge on statute of limitations grounds.  Respondent argues these three claims are defaulted.   After the Georgia Supreme Court remanded the claims to the state habeas court as a result of the first CPC application, the state habeas corpus issued a second order denying the three claims on the merits.  (See doc. no. 9-8.)  Although Petitioner timely filed his application for a CPC in the Georgia Supreme Court, Petitioner failed to file a timely notice of appeal in the state habeas court.  (Doc. no. 9-9.)

Under O.C.G.A. § 9-14-52(b), an applicant has thirty days to file *both* an application for a CPC in the Georgia Supreme Court and a notice of appeal with the clerk of the superior court in which the state habeas court's order entered.  The state habeas court denied relief on June 18, 2018, Petitioner's application for a CPC was filed in the Georgia Supreme Court on July 16, 2018, but the notice of appeal was not filed with the clerk of the superior court in which the state habeas court's order entered until July 19, 2018.  (Doc. nos. 9-8, 9-9.)  A timely application for a CPC and a timely notice of appeal are required to confer jurisdiction, and in the absence of both, the application must be dismissed.  See, e.g., Fullwood v. Sivley, 517 S.E.2d 511, 513-514, 516 (Ga. 1999) (explaining application for a CPC "and a notice of appeal are both necessary to invoke [Supreme Court's] jurisdiction over an appeal from the denial of a petition for habeas corpus" and explaining jurisdictional requirement is strictly enforced, even as to *pro se* petitioner).  Petitioner's

14

failure to timely fulfill the requirements for applying to the Georgia Supreme Court for a CPC to review the second state habeas order denying the claims raised in Grounds Two, Four, and Six of the federal petition means he failed to exhaust all of his available state remedies, and has "resulted in procedural default of those claims."  O'Sullivan, 526 U.S. at 848; Pope, 358 F.3d at 854.

> **3.     Petitioner Cannot Satisfy the Cause and Prejudice Standard to Justify Federal Review of His Defaulted Claims, and the Miscarriage of Justice Exception Does Not Apply**

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default."  Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)).  "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 565 U.S. 266, 280 (2012) (internal quotation marks omitted).  "Once cause is proved, a petitioner also must prove prejudice.  He must show 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

Petitioner has not shown something external to him impeded his efforts to comply with the statutory requirements of O.C.G.A. § 9-14-52(b).  Indeed, he concedes he failed to include a certificate of service with his notice of appeal to the state habeas court.  (Doc. no. 12, p. 18.) As the Supreme Court explained, Petitioner's notice of appeal could not be deemed timely filed under the "mailbox rule" because there was no postmark or certificate of service

15

associated with it.  (Doc. no. 9-9 (citing <u>Massaline v. Williams</u>, 554 S.E.2d 720 (Ga. 2001).)

Petitioner finds it "hard to believe" there was no postmark on his envelope, (doc. no. 12, p.

20), but provides no evidence to the contrary.  He simply asks this Court to disregard the state's

well-established rules regarding the requirements for a timely CPC application and notice of

appeal, a position that was also rejected in his motion for reconsideration to the Georgia

Supreme Court, but this Court cannot.  <u>See</u> <u>Boyd</u>, 697 F.3d at 1335.   Accordingly, Petitioner

has failed to demonstrate the necessary cause and prejudice necessary to overcome his

procedural default.

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without

a showing of cause and prejudice to correct a fundamental miscarriage of justice."  <u>Jones</u>, 436 F.3d

at 1304 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)).   The narrow fundamental

miscarriage of justice exception encompasses the extraordinary instance in which a

constitutional violation probably has resulted in the conviction of one actually innocent of the

crime.  <u>Murray</u>, 477 U.S. at 496; <u>see also</u> <u>Johnson</u>, 256 F.3d at 1171 ("This exception is

exceedingly narrow in scope, as it concerns a petition's 'actual' innocence rather than his

'legal' innocence.").   In <u>McQuiggin v. Perkins</u>, the Supreme Court held that this exception

survived AEDPA's passage but "applies to a severely confined category:  cases in which new

evidence shows it is more likely than not that no reasonable juror would have convicted [the

petitioner]."  569 U.S. 383, 395 (2013) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 329 (1995)).

Petitioner does not argue, let alone submit any evidence, that he is probably, factually innocent

of the crimes of which he was convicted.  To the contrary, as discussed in detail below, all of

16

his arguments are based on legal theories of alleged error.  Accordingly, Grounds Two, Four, and Six in the instant § 2254 petition have been defaulted and provide no basis for federal habeas relief.

      **B.**    **Applying AEDPA Deference to the Ineffective Assistance of Counsel Claims Previously Rejected by the State Court, Federal Habeas Relief Is Not Warranted**

          **1.**    **Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims**.

    Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691.  Indeed, "strategic choices are 'virtually unchallengeable.'" <u>Provenzano v. Singletary</u>, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing <u>Strickland</u>, 466 U.S. at 690 and <u>Waters v. Thomas</u>, 46 F.3d 1506, 1522 (11th Cir. 1995) (*en banc*)).  To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. <u>Strickland</u>, 466 U.S. at 690; <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983) (*per curiam*) ("Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." (citations omitted)).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations

18

and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (explaining appellate counsel not required to raise every non-frivolous issue).  Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'"  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted).  Moreover, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review.  Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264.  Prejudice turns on whether "the neglected claim would have a reasonable probability of success on appeal."  Philmore, 575 F.3d at 1265 (citation omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner."  Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the

19

petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. at 699. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Richter, 562 U.S. at 105 (quotation marks and citations omitted); see also Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." Woods v. Etherton, 578 U.S.-, 136 S. Ct. 1149, 1151 (U.S. 2016) (internal quotations and citations omitted). To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial." Richter, 562 U.S. at 105; see also Sexton v. Beaudreaux, 584 U.S.-, 138 S. Ct. 2555, 2560 (U.S. 2018) ("[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."

(citation omitted)); <u>Woods</u>, 575 U.S. at 316 ("AEDPA's standard is intentionally difficult to meet.").

When granting a CPC to determine whether the state habeas court's first opinion that three claims were foreclosed from review, the Georgia Supreme Court also affirmed the state habeas court's ruling on the five ineffective assistance claims remaining for consideration in this federal petition as follows:

> The other habeas claims alleged ineffective assistance of appellate counsel for not raising trial counsel's failure to file a speedy trial demand, argue that recidivist sentencing was inappropriate, challenge a jury charge, request a jury charge, and argue sufficiency of the evidence supporting the child molestation conviction. The habeas court's denial of those claims is affirmed.

<u>Gordon</u>, 814 S.E.2d at 681 n.2.

Because the state supreme court decision on the first CPC application was not accompanied by reasons for affirming the claims that were not remanded, this Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" when determining, pursuant to 28 U.S.C. § 2254(d), whether the state court decision was reasonable. <u>Wilson v. Sellers</u>, 584 U.S.-, 138 S. Ct. 1188, 1192 (2018). The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." <u>Tharpe</u>, 834 F.3d at 1336.

Thus, the Court turns its attention to the state habeas court reasoning in its first decision, as it is the last state court to decide Petitioner's federal claims that are not barred as explained

in Part III(A), in a reasoned opinion.  See Wilson, 138 S. Ct. at 1192.  As discussed below, the

state habeas court correctly identified and applied the two-part Strickland analysis to determine

Petitioner did not show counsel's performance was objectively unreasonable or that he was

prejudiced by counsel's performance.  (See doc. no. 9-5.)

> **2.     The State Court's Application of Strickland to Petitioner's Ineffective Assistance Claim in Ground One Was Not Objectively Unreasonable**

In Ground One, Petitioner argues he received ineffective assistance from Mr. Johnson

because he did not raise Ms. Colohan's alleged ineffectiveness in failing to demand a speedy

trial.  The state habeas court rejected this claim, concluding Petitioner had not shown Mr.

Johnson's performance was objectively unreasonable.  (Id. at 3.)

> **a.     Background**

Mr. Johnson was admitted to the Georgia Bar in 1983 and served as an assistant district

attorney in the Augusta Judicial Circuit for four years before entering private practice.  (Doc.

no. 9-10, p. 7.)  At the time he represented Petitioner, well over ninety percent of Mr. Johnson's

practice was devoted to criminal work, and he had handled well over one hundred felony trials,

as well as approximately thirty appeals.  (Id.)  Mr. Johnson was appointed post-conviction to

represent Petitioner, and candidly admitted he and Petitioner had a difference of opinion as to

the issues that should be raised on appeal.  (Id. at 8.)  After consulting with Petitioner and Ms.

Colohan, Mr. Johnson raised the five issues on appeal that he believed were most viable and

meritorious.  (Id. at 8-9.)

Mr. Johnson testified at the state habeas hearing he never raises speedy trial issues

because "[s]peedy trials bite you every time."  (Doc. no. 9-10, p. 9.)  Moreover, as Ms. Colohan

testified at the hearing on the motion for new trial, at the time she took over Petitioner's representation from another attorney from the public defender's office who had been working on Petitioner's case, the case was at the trial stage and the time for filing a statutory demand for a speedy trial had long passed.  (Doc. no. 9-16, pp. 58, 69.)

### b.    Analysis

Petitioner alleges Mr. Johnson should have raised an ineffective assistance claim against Ms. Colohan for not making a speedy trial demand.  The state habeas court determined Petitioner could not meet the deficient performance prong of Strickland.  (Doc. no. 9-5, p. 3.) Petitioner presents nothing demonstrating there was an error in the state habeas decision about the ineffective assistance claim that was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Woods, 136 S. Ct. at 1151.  Indeed, Georgia law supports Mr. Johnson's professional judgment that a speedy trial demand would not have been successful such that Ms. Colohan could be considered ineffective for not raising the challenge.  See Jenkins v. State, 637 S.E.2d 785, 786 (Ga. Ct. App. 2006) (rejecting ineffective assistance claim where speedy trial demand would have been untimely and recognizing delay is often a favorable trial tactic).  To the extent Petitioner may be claiming a constitutional speedy trial claim should have been raised, he has not argued, let alone shouldered his burden to show, such a motion would have been successful.  See Chalk v. State, 733 S.E.2d 351, 355 (Ga. Ct. App. 2012) (recognizing petitioner raising ineffective assistance claim based on failure to file motion to dismiss based on Sixth Amendment speedy trial claim has burden to show motion would have been granted if filed).

23

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  This claim provides no basis for federal habeas corpus relief.

### 3.    The State Court's Application of Strickland to Petitioner's Ineffective Assistance Claim in Ground Three Was Not Objectively Unreasonable

In Ground Three, Petitioner argues Mr. Johnson provided ineffective assistance by not raising an ineffective assistance claim with respect to Ms. Colohan not arguing Petitioner was ineligible to be sentenced as a recidivist under O.C.G.A. § 17-10-7(a).  Under this statutory provision, a person convicted of a felony in Georgia, or convicted under the laws of another state that would be considered a felony in Georgia and resulted in a sentence to confinement in a penal institution, shall be sentenced to the longest period of punishment for the subsequent conviction, except, unless the law provides otherwise, the judge may probate or suspend the maximum sentence in an exercise of discretion.  According to Petitioner, his prior, out-of-state convictions should not have been used to assign him a recidivist designation.

Petitioner argues he should not have been sentenced as a recidivist under O.C.G.A. § 17-10-7(a), and Mr. Johnson was ineffective for failing to raise an ineffective assistance of trial counsel claim against Ms. Colohan for not challenging the recidivist designation at Petitioner's original sentencing.[2]   The record shows Mr. Johnson did argue Petitioner was improperly sentenced as a recidivist under O.C.G.A. § 17-10-7(c) in the motion for new trial,

---

[2]Mr. Johnson noted in his appellate brief Ms. Colohan failed to object to sentencing on a flawed recidivist notice but further explained the deficiency was addressed and corrected in post-conviction proceedings.  (Doc. no. 9-16, p. 133 n.9.)

resulting in the State conceding the issue as to subsection (c).  (Doc. no. 9-15, p. 7; doc. no. 9-16, pp. 37-39.)  As to Petitioner's remaining argument that his out-of-state felony convictions resulting in a sentence of probation should not count against him, and thus should have been challenged, Mr. Johnson disagreed with Petitioner's position.

At best, Petitioner has pointed to language in one Georgia Court of Appeals case suggesting one prior conviction counted against the recidivist defendant may not have followed the language of the statute because the sentence was for probation rather than a sentence in a penal institution.  See Wheeler v. State, 606 S.E.2d 612, 613 (Ga. Ct. App. 2004).[3] However, subsequent Georgia cases reject this conclusion and instead find that a probated sentence does not exclude a defendant from a recidivist sentence under O.C.G.A. § 17-10-7(a).  See Cook v. State, 699 S.E.2d 831, 833 (Ga. Ct. App. 2010) (explaining four-year sentence to penal institution served on probation was not excluded from consideration for recidivist sentence under O.C.G.A. § 17-10-7(a));  Johnson v. State, 612 S.E.2d 29, 31 (Ga. Ct. App. 2005) ("[T]he fact that a part of his sentence on the prior felony was probated does not mean that previous conviction could not be used to sentence him as a recidivist under OCGA § 17-10-7(a).")

The Court need not delve into any possible ambiguity in Georgia case law because, as the state habeas court determined, Petitioner did not present any evidence his prior convictions did not qualify as predicate convictions for recidivist sentencing under O.C.G.A. § 17-10-7(a), and it is his burden to show he is entitled to relief.  See Holt v. Ebinger, 814

---

[3]The opinion specifically recognized the incomplete record on appeal and state a determination could not be made on whether the appellant was properly sentenced as a recidivist. See Wheeler, 606 S.E.2d at 613.

S.E.2d 298, 301 (Ga. 2018) (explaining petitioner has burden of proof in habeas case and ambiguous record is not sufficient to sustain ineffective assistance claim). Of course, Petitioner also fails to show an unreasonable application of <u>Strickland</u> in the state court's determination Petitioner did not satisfy the two-part test concerning Mr. Johnson's performance on the sentencing issue because the record does not show the sentence upon which he is confined is a recidivist sentence at all. (Doc. no. 9-2, pp. 1-2.) Even if Petitioner had established deficient performance, which he has not, he cannot show prejudice because the record does not support the conclusion he is confined pursuant to a recidivist sentence.

To the extent Petitioner attempts to raise a new claim in his reply brief that his 2018 sentence is improper, his attempt fails. (Doc. no. 12, pp. 5-7.) First, a new issue cannot be raised in a reply brief. <u>See</u> <u>Herring v. Sec'y, Dep't of Corr.</u>, 397 F.3d 1338, 1342 (11th Cir. 2005). Second, any such claim would be procedurally barred for the reasons explained in Part III(A). Petitioner concedes the issue has not been properly exhausted, (doc. no. 12, p. 3), but offers no valid reason external to him for not exhausting any challenge to the sentence imposed in 2018 in the state courts. He admits he was present for the resentencing but claims he did not know his recidivist designation had been removed. (<u>Id.</u>) The claim rings hollow in light of publicly available records showing Petitioner filed several motions in the trial court regarding his 2018 sentence. <u>State v. Gordon</u>, Case No. 2007RCCR1476 (Richmond Cty. Sup. Ct. Apr. 17, 2018, Aug. 28, 2018, Nov. 5, 2018, Nov. 26, 2019), *available at* http://coc.augustaga.gov (follow "Criminal Search" hyperlink; then search "Gordon, Andre"

last visited May 4, 2020).[4]   The trial court entered an order on January 8, 2019 denying Petitioner's motion to correct a void sentence.  (Id.)  Accordingly, any issue Petitioner has with his 2018 resentencing is not properly before this Court.

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Neither Ground Three nor Petitioner's procedurally improper reply-brief claim concerning his 2018 sentence provides a basis for federal habeas corpus relief.

**4.    The State Court's Application of Strickland to Petitioner's Ineffective Assistance Claim in Ground Five Was Not Objectively Unreasonable**

In Ground Five, Petitioner argues Mr. Johnson provided ineffective assistance by not raising an ineffective assistance claim against Ms. Colohan based on her failure to challenge the jury instruction for rape, which Petitioner contends did not fully explain the "forcible" element of rape.

**a.    Background**

Ms. Colohan testified at the motion for new trial hearing her objection to the force element of the rape charge had been overruled, (doc. no. 9-16, p. 76), but according to the trial transcript, after the trial court gave the jury instructions and asked if there were any objections, Ms. Colohan responded, "None of which I am aware of at this time, Your Honor."  (Doc. no. 9-14, p. 74.)  Mr. Johnson identified this issue on appeal, arguing:  "Trial counsel failed to

---

[4] United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (explaining a court may take judicial notice of another court's record to establish existence of ongoing litigation and related filings).

object to the court's charge on the material elements of the offense of rape.  Specifically, trial counsel failed to object to the court's omission of the definition of 'forcibly.'"  (Doc. no. 9-16, p. 133.)

The state habeas court found Mr. Johnson did raise an ineffective assistance claim on appeal concerning the jury instruction for rape.  (Doc. no. 9-5, pp. 4-5.)  The opinion by the Georgia Court of Appeals confirms Mr. Johnson raised an ineffective assistance claim concerning Ms. Colohan's failure to object to the jury charge on rape, but the court determined any such objection would have been futile, thereby defeating any ineffective assistance claim on the point.  See Gordon, 761 S.E.2d at 175.  The Court of Appeals recognized Georgia's rape statute, O.C.G.A. § 16-6-1(a)(1), provides "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will."  Id. at 174.  The opinion further explains:

> [T]he terms "forcibly" and "against her will" are two separate elements of proving rape.  The term "against her will" means without consent; the term "forcibly" means acts of physical force, threats of death or physical bodily harm, or *mental coercion, such as intimidation.*  The [S]tate must prove the element of force as a factual matter in forcible rape cases rather than presuming force as a matter of law based on the victim's age.  However, the quantum of evidence to prove force against a child is minimal, since physical force is not required. *Intimidation may substitute for force. . . .  Lack of resistance, induced by fear, is force* [.]

Id. (citing House v. State, 512 S.E.2d 287 (Ga. Ct. App. 1999)).

The appellate court then recited verbatim the trial court's jury charge, which included the language "forcibly and against her will," and an explanation the State must prove the element of force, which may be "satisfied where there is *a lack of resistance induced by fear*." Id. (emphasis in original).  The Court of Appeals concluded the trial court's definition of force

precisely tracked the applicable definition in Georgia and did not need to include physical force, death threats, or bodily harm because the jury charges are tailored to the evidence and no evidence was presented on these particulars of force not included in the charge, nor were they alleged in the indictment. Id. (citing Harris v. State, 750 S.E.2d 721, 725 (Ga. Ct. App. 2013) and House, 512 S.E.2d at 290-91.). Indeed, as described in Part I, *supra*, the evidence adduced at trial regarding force was the victim's testimony about a lack of resistance induced by fear.

### b.     Analysis

Petitioner argues Mr. Johnson provided ineffective assistance for not raising Ms. Colohan's alleged ineffective assistance in not objecting to the trial court's jury charge on the forcible element of rape. In doing so, he completely ignores the irrefutable evidence, as set forth in detail above, Mr. Johnson did raise the issue on appeal. As Mr. Johnson raised the jury charge issue, Petitioner cannot, as found by the state habeas court, satisfy the two-pronged Strickland standard. (Doc. no. 9-5, pp. 4-5.) Mr. Johnson's performance was not deficient, as he raised the claim Petitioner argues should have been raised. Moreover, because Mr. Johnson raised the claim, Petitioner cannot show prejudice in the form of a different outcome to the appeal. See Strickland, 466 U.S. at 694.

While ignoring the two-part Strickland standard for an ineffective assistance claim, Petitioner instead focuses on his interpretation of the requirement for defining "forcible" in a jury charge for rape. Of course, as described above, the Georgia Court of Appeals has already spoken to the issue and determined the trial judge's jury instructions satisfied the dictates of Georgia law, but also important to the instant case, the claim before this Court is not a stand-

alone claim about alleged trial court error.  Petitioner's claim is an ineffective assistance claim against Mr. Johnson for not raising an issue that, as correctly identified by the state habeas court, was, in fact, raised.  Petitioner presents nothing demonstrating there was an error in the state habeas decision about the ineffective assistance claim that was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Woods, 136 S. Ct. at 1151.

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Ground Five provides no basis for federal habeas corpus relief.

### 5.   The State Court's Application of Strickland to Petitioner's Ineffective Assistance Claim in Ground Seven Was Not Objectively Unreasonable

In Ground Seven, Petitioner argues Mr. Johnson provided ineffective assistance by not raising an ineffective assistance claim against Ms. Colohan based on her failure "to challenge the sufficiency of count (1) child molestation."  (Doc. no. 1, p. 27.)  According to Petitioner, there was no "evidence of any actual intent on part of petitioner," and Ms. Colohan's strategy of pursuing an "all or nothing" defense that the acts alleged had not occurred was unreasonable under the circumstances.  (Doc. no. 12, p. 10.)

#### a.   Background

Count One of the indictment charged Petitioner under O.C.G.A. § 16-6-(4)(a) of "fondling [the underage victim's] breasts with his hands, with intent to arouse and satisfy the sexual desires" of the accused.  (Doc. no. 9-10, p. 49.)  Ms. Colohan testified at the motion for new trial her trial strategy was to focus on the believability of the victim.  (Doc. no. 9-16, p.

30

72.)  In other words, the trial would focus on a credibility contest and who the jury would believe.  (Id.)  "Our whole point of view of the case is it did not happen."  (Id. at 74; see also id. at 69 ("[T]he whole basis of our defense was it didn't happen at any time.").)  Mr. Johnson testified at the state habeas hearing he did not raise an ineffective assistance claim against Ms. Colohan on her handling of the child molestation charge because he did not see it as a viable issue.  (Doc. no. 9-10, p. 11.)  He further testified, "[T]he girl got on the witness stand, she swore to tell the truth, she described sexual behavior that would constitute child molestation. I did not see a challenge to the sufficiency of the evidence."  (Id. at 26.)

At trial, a Richmond County Sheriff's Office investigator testified the victim told him during a taped interview that Petitioner had, on several different occasions, snuck into her room, lay in bed with her, and, among other things, fondled her breasts and buttocks.  (Doc. no. 9-15, p. 107.)  The investigator also testified the victim reported Petitioner fondled her breasts on a couch at her aunt's residence.  (Id. at 108-09.)  The victim also testified about Petitioner "touching and fondling" her breasts and other areas of her body.  (Doc. no. 9-14, pp. 10-12.)

**b.    Analysis**

Petitioner argues Mr. Johnson should have raised an ineffective assistance claim against Ms. Colohan based on her failure to put the State to its burden of proof on the child molestation charge.  Petitioner contends there was no evidence of "any actual intent" on Petitioner's part, (doc. no. 12, p. 10), presumably referring to the language in the indictment concerning "intent to arouse and satisfy the sexual desires of said accused."  (Doc. no. 9-10, p. 49.)  The state habeas court rejected Petitioner's claim on this point, ruling Petitioner did not establish

31

deficient performance because he had presented no evidence to contradict Mr. Johnson's testimony he saw no issue "since all the prosecution has to prove is that a child was molested." (Doc. no. 9-5, p. 5.)  Petitioner now presents nothing demonstrating  there was an error in the state habeas decision about the ineffective assistance claim that was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Woods, 136 S. Ct. at 1151.

Citing Strickland v. State, 479 S.E.2d 125 (Ga. Ct. App. 1996), apparently for the general proposition there is an intent element of child molestation, (doc. no. 12, p. 10), Petitioner argues in these proceedings there should have been a challenge to the child molestation charge because there was no evidence of his actual intent.   However, as the state habeas court found, Petitioner has not established Mr. Johnson's performance was deficient in winnowing out an argument he believed had no merit.  First, Ms. Colohan testified her strategy at trial was an all or nothing approach because the defense position was that the actions alleged never occurred.  (Doc. no. 9-16, pp. 72-74.)  Raising a challenge that Petitioner did not have the requisite intent to arouse or satisfy his sexual desires while fondling the victim would obviously be at cross purposes with the strategy that the fondling never occurred.  Petitioner has not shown Ms. Colohan's trial strategy was one that no competent counsel would have made, see Strickland, 466 U.S. at 690, and, as explained above, "strategic choices are virtually unchallengeable."  Provenzano, 148 F.3d at 1332.  Mr. Johnson recognized as much at the state habeas hearing when he testified his inquiry into a possible ineffective assistance claim would be limited once trial counsel explained a choice was based on trial strategy.  (Doc. no. 9-10, pp. 12-13.)

Second, the case law supports Mr. Johnson's professional judgment that the victim's testimony that she was molested is sufficient to support a child molestation conviction.  See Dorsey v. Burnette, 319 F. App'x 835, 840-41 (11th Cir. 2009) (*per curiam*); Chitwood v. States, 834 S.E.2d 334, 339 (Ga. Ct. App. 2019).  Mr. Johnson cannot be ineffective for failing to raise an issue with no merit.  See Nyhuis, 211 F.3d at 1344.  In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Ground Seven provides no basis for federal habeas corpus relief.

### 6. The State Court's Application of Strickland to Petitioner's Ineffective Assistance Claim in Ground Eight Was Not Objectively Unreasonable

In Ground Eight, Petitioner argues Mr. Johnson provided ineffective assistance by not raising as an alleged error on appeal that the trial court erred in not charging sexual battery as a lesser included offense of child molestation.  The record reflects some confusion on the exact nature of Petitioner's claim.  As set forth in the state habeas petition and in the federal petition, the claim is for ineffective assistance of appellate counsel based on a failure to challenge the trial court not instructing the jury on sexual battery as a lesser included offense of child molestation.  (Doc. no. 1, p. 29; doc. no. 12, p. 11; doc. no. 9-3, p. 8.)  However, at the state habeas hearing, counsel for the state questioned Mr. Johnson as if the claim were for failing to raise a claim for "ineffective assistance of trial *counsel* for not giving a jury charge on the offense of sexual battery as a lessor-included offense of child molestation."  (Doc. no. 9-10, p.

33

12.)  When Petitioner cross-examined Mr. Johnson, he framed the question as an ineffective assistance of appellate counsel claim based on failing to raise an allegation of trial *court* error in not charging the lessor included offense.  (Id. at 26.)  The state habeas court cut short the questioning on the claim when announcing the issue had been decided adversely to Petitioner on appeal and stating, "[Petitioner] contends that his trial *lawyer* was ineffective in failing to request a jury charge on sexual battery as a lesser-included offense of aggravated sexual battery and child molestation."  (Id. at 27.)  To which Petitioner responded, "Yes, sir."  (Id.)

Examination of Mr. Johnson's appellate brief and the appellate opinion, reveals the issue was raised under the auspices of alleged ineffective assistance of trial *counsel*, not as alleged error by the trial *court*.  Gordon, 761 S.E.2d at 175; (doc. no. 9-16, pp. 132-33.)  The court of appeals rejected the trial counsel claim by explaining no evidence had been presented as to why the lesser included offense would have been appropriate under the facts of the case and further explained a charge should be apt and precisely adjusted to a theory in the case.  Id. The appellate court found neither deficient performance nor prejudice by trial counsel's failure to request a charge on sexual battery.  Id.

In the written state habeas order, the issue was identified as Petitioner had presented it as alleged error by the trial *court.*  (Doc. no. 9-5, p. 5.)  The order cited Mr. Johnson's hearing testimony that according to his research, sexual battery is not a lesser included offense of child molestation based on the circumstances of this case, (doc. no. 9-10, pp. 12, 27 ), and his awareness that trial counsel did not request a lesser offense charge as part of her defense

strategy that the events did not occur at all.  (Doc. no. 9-5, p. 5.)[5]  In the end, the state habeas court determined Petitioner could not satisfy the two-prongs of <u>Strickland</u> and denied relief.

As presented here, the Court's focus is whether Mr. Johnson provided ineffective assistance by not challenging the trial court's failure to *sua sponte* charge the jury on sexual battery as a lesser included offense of child molestation.  (Doc. no. 1, p. 29.)  In support of his claim, Petitioner asserts touching the breasts of the victim with "general intent," rather than with the intent to arouse or satisfy the sexual desires of the child or person as required for child molestation, would satisfy the elements of sexual battery pursuant to O.C.G.A. § 16-6-22.1.  (Doc. no. 12, p. 11.)  The argument fails to show Mr. Johnson's strategic decision not to raise a stand-alone claim of trial court error fell outside the range of professionally competent counsel.

---

[5] When asked at the motion for new trial hearing whether she had considered asking for an instruction as to any lesser offenses as to the indictment, Ms. Colohan testified:

> No and that was pure trial strategy.  Our whole point of view of the case is it did not happen and I  - - we did not - - and I know I discussed this, I cannot say whether I know 100 percent if I discussed it with [Petitioner] or not, probably not but it was pure trial strategy, all or none.  If the allegations were of touching, the doctor said there is [sic] no signs of touching or no signs of penetration, and there were - - there was no reason to include a lesser included offense, specifically when a very reasonable plea offer had been made earlier and rejected.  And quite honestly, he would have gotten the same punishment in that plea agreement that he would have gotten, probably worse, if we had asked for a lesser included.  So my strategy was since it was all based on who believed who, we were going forward with an all or none.

(Doc. no. 9-16, pp. 74-75.)

First, Georgia law is clear that, absent a written request for a charge on a lesser included offense at or before the close of evidence, there is no error in failing to give the lesser charge. Armstrong v. State, 664 S.E.2d 242, 245 (Ga. Ct. App. 2008). Thus, where, as recognized by Mr. Johnson, Ms. Colohan did not request the lesser charge as part of her trial strategy, there was no basis to allege trial court error in failing to give the lesser instruction. Second, as explained by the Georgia Court of Appeals, a charge must be tailored to the evidence and a theory of the case. Gordon, 761 S.E.2d at 175. Charging a lesser included offense would not be in accordance with the defense's theory of the case that the events alleged never occurred.

Third, Petitioner's argument about "general" intent relies on his theory, rejected above, that the victim's testimony cannot establish all the elements necessary for a child molestation conviction. Petitioner did not testify at trial, and his belated attempts to alter the evidentiary landscape with an alternative theory about the intent behind his interactions with the victim fails to show an instruction on the lesser included offense should have been given. See Walker v. State, 632 S.E.2d 482, 485 (Ga. Ct. App. 2006) (rejecting claim trial court should have given instruction on lesser included offense of sexual battery where victim's testimony established all elements of child molestation, defendant did not testify, and defense repeatedly suggested victim fabricated allegation).

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented. Ground Eight provides no basis for federal habeas corpus relief.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the

36

§ 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 4th day of May, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

37